## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| **SCARLETT BOWMAN,** | * | |
| **Plaintiff,** | * | |
| v. | * | **Case No. 1:23-cv-00452-JRR** |
| **SELECT PORTFOLIO SERVICING, INC.,** *et al.,* | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## <u>MEMORANDUM OPINION</u>

This matter comes before the court on Defendant Rosenberg and Associates, LLC's ("Rosenberg") Motion to Dismiss (ECF No. 14; the "Rosenberg Motion") and Defendant Select Portfolio Servicing Inc.'s ("SPS") Motion for Judgment on the Pleadings (ECF No. 20; the "SPS Motion"). The parties' submissions have been reviewed and no hearing is necessary. Local Rule 105.6 (D. Md. 2023). For the reasons that follow, by accompanying order, The Rosenberg Motion will be granted in part and denied in part; and the SPS Motion will be granted.

## <u>BACKGROUND</u>[1]

Plaintiff Scarlett Bowman is a citizen of the State of Maryland. (ECF No. 3, ¶ 3.) Defendant SPS is a mortgaging servicing corporation with its principal place of business in Salt Lake City, Utah. *Id.* ¶ 5. Defendant Rosenberg is a debt collection law firm headquartered in Bethesda, Maryland. *Id.* ¶ 10.

---

[1] For purposes of this memorandum, the court accepts as true the well-pled facts set forth in the Complaint. (ECF No. 3.)

Plaintiff currently resides at 1251 Shaffersville Road, Mount Airy, Maryland 21771 (the "Subject Property"). (ECF No. 3 ¶ 3.)  On December 8, 2006, Plaintiff executed a balloon fixed rate Note in the amount of $510,000.00 (the "Note") payable to Pinnacle Financial Corporation d/b/a Tri-Star Lending Group ("Tri-Star") as the lender.  The Note was secured by a Deed of Trust executed on December 8, 2006 (the "Deed").  *Id.* ¶¶ 12 and 18 (together, the Note secured by the Deed are referred to herein as the "Loan" or the "Mortgage").  SPS is responsible for servicing Plaintiff's Mortgage.  Rosenberg acts as an agent of Towd Point in the filing of foreclosure complaints against borrowers such as Plaintiff in the state of Maryland.  *Id.* ¶ 5 and 10.  SPS began servicing Plaintiff's Mortgage in the fall of 2016.  *Id.* ¶ 14.  Plaintiff was current on her Mortgage until approximately May 2020, when her business was impacted by the COVID-19 pandemic.  *Id.* ¶ 15.  Plaintiff contacted SPS for COVID-19 related loss mitigation options; SPS offered a trial period payment plan spanning May through July 2022.  *Id.* ¶ 16.  SPS indicated that it would not provide Plaintiff with loan modification terms until she made the payments pursuant to the trial period payment plan.  (ECF No. 3 ¶ 17.)

On March 24, 2022, Plaintiff requested to see the Collateral File[2] related to her Loan because she did not believe SPS had authority to collect the Loan debt on behalf of an unknown creditor.  Eventually, SPS provided Plaintiff with a "copy" of the original Note, but Plaintiff did not believe that the endorsements in the copy of the Note supported a conclusion that SPS had authority to enforce the Note.  (ECF No. 3 ¶ 18.)  The Note contains the following endorsements and allonges:

---

[2] Collateral File From Pinnacle Financial Corporation, dated June 7, 2007; *see infra* Consideration of Exhibits.

1. The bottom of the Note has two endorsements — one undated endorsement from Tri-Star and a second endorsement from Impac Mortgage Holding which has "VOID" handwritten across the endorsement.  The Loan Number is 132326852.

2. An undated Endorsement Allonge reflects an endorsement from Tri-Star and references the Note and Loan Number 1103667267.

3. An untitled and undated allonge reflects an endorsement from Pinnacle Financial Group to Impac Funding Corporation; Loan Number 1103667267.

4. An undated Endorsement Allonge reflects an endorsement from Tri-Star to Impac Funding Corporation. The allonge references the Note; Loan Number 1103667267.

5. An untitled and undated allonge reflects an endorsement from Impac Funding Corporation to UBS Real Estate Securities Inc.; Loan Number 1103667267.

6. An undated allonge reflects an endorsement from UBS Real Estate Securities Inc. to Wells Fargo Bank, N.A., as Trustee for RMAC REMIC Trust, Series 2010-1.   The allonge references a Note dated May 31, 2007. The Loan Numbers are 1103667267 and 335987370. Plaintiff alleges that because the Allonge to Note references a different Note than the December 8, 2006, Note, the "Allonge is not for the subject loan and therefore this is a break in the chain of ownership."

7. An undated allonge reflects an endorsement from Wells Fargo Bank, N.A., in its capacity as Trustee for the RMAC REMIC Trust, Series 2010-1.

8. An undated allonge references a Note dated January 1, 2007.  Plaintiff alleges this allonge is not for the subject Loan.

(ECF No. 3, ¶ 18.)

Rosenberg issued a validation notice to Plaintiff indicating that the "validation period" concluded on September 29, 2022. (ECF No. 3 ¶ 20; Validation Notice ECF No. 14-4.) On October 10, 2022, counsel for Plaintiff sent a letter to Rosenberg to dispute the debt. (ECF No. 3 ¶ 21; Dispute Letter, ECF No. 14-5.) Rosenberg did not respond to the Dispute Letter. (ECF No. 3 ¶ 21.)

Rosenberg mailed Plaintiff a Notice to All Occupants regarding the foreclosure proceedings against her home. *Id.* ¶ 23. Plaintiff alleges that, without reason, SPS notified Plaintiff's insurance company, Nationwide Insurance, that SPS had initiated foreclosure proceedings against Plaintiff's home. *Id.* ¶ 22. On November 11, 2022, Rosenberg filed a foreclosure action in the Circuit Court for Howard County, Maryland (the "Foreclosure Action").

On December 28, 2022, Plaintiff filed her Complaint in the Circuit Court for Howard County, Maryland. (ECF No. 3.) On February 19, 2023, SPS removed the action to this court. (ECF No. 1.) The Complaint sets forth five counts: Violation of the Maryland Consumer Protection Act, MD. CODE ANN., COMM. LAW § 13-101 ("MCPA") (Count I); Violation of Maryland Mortgage Fraud Protection Act ("MMFPA"), MD. CODE. ANN., REAL PROP. §§ 7-401, *et. seq.* (Count II); Fraud (Count III); Violation of the Federal Debt Collection Practices Act ("FDCPA") (Count IV); and Negligence (Count V). (ECF No. 3.) The prayer for relief seeks economic and noneconomic damages, costs and attorney's fees, and any other relief this court deems just and proper. *Id.*

Rosenberg moves to dismiss Plaintiff's Complaint pursuant to FED. R. CIV. P. 12(b)(6) and argues that Plaintiff's claims fail because they arise from Plaintiff's misunderstanding of either the facts or law. (ECF No. 14-1 at 4.) SPS moves for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c) and argues that: (1) Plaintiff's claims that the Note is not owned by Towd Point are

refuted by the records before the court; (2) Plaintiff's claims under the MCPA, MMFPA, and for fraud fail because she cannot plausibly allege that SPS made any intentional misrepresentations or that she suffered harm from the same; (3) Counts I through III do not satisfy the heightened pleading standard of FED. R. CIV. P. 9(b); (4) Plaintiff's FDCPA claim fails because SPS is not a "debt collector" as defined by the FDCPA; and (5) Plaintiff's negligence claim fails because SPS, as a mortgage loan servicer, does not owe a duty of care to a customer under Maryland Law.  (ECF No. 21 at 1-2.)

## LEGAL STANDARDS

### I.   FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) and 12(c)

A party may move for judgment on the pleadings after the pleadings are closed, as long as it is made early enough so as not to delay trial.  FED. R. CIV. P. 12(c).  "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standard applicable to motions to dismiss under Rule 12(b)(6)."  *Green v. Sw. Credit Sys., L.P.*, 220 F. Supp. 3d 623, 624 (D. Md. 2016) (citing *Walker v. Kelly*, 589 F.3d 127, 139 (4th Cir. 2009)).

"In *Twombly*,[3] the Court changed significantly how the legal sufficiency of a claim is to be measured when it is attacked under Rule 12(b)(6).  As one eminent scholar of federal civil procedure has said of *Twombly*: 'Notice pleading is dead.  Say hello to plausibility pleading.'" *Macronix Int'l Co. v. Spansion Inc.,* 4 F. Supp. 3d 797, 799-800 (E.D. Va. 2014) (quoting A. Benjamin Spencer, *Plausibility Pleading*, 49 B.C. L. REV. 431, 431-32 (2008)).  The "liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2) has been decidedly tightened (if not discarded) in favor of a stricter standard requiring the pleading of facts painting a 'plausible' picture of liability."  *Id.; see also Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d

---

[3] *Bell Atl. Corp., v. Twombly,* 550 U.S. 544 (2007)

250, 262 (4th Cir. 2009) (Jones, J., concurring in part, dissenting in part, and remarking that "*Twombly* and *Iqbal*[4] announce a new, stricter pleading standard.")

"The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint' and not to 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Presley v. Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999)).  Accordingly, a "Rule 12(b)(6) motion should only be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards*, 178 F.3d at 244 (citing *Republican Party v. Martin,* 980 F.2d 943, 952 (4th Cir. 1992)). The court, however, is ". . . not required to accept as true the legal conclusions set forth in a plaintiff's complaint." *Id.* (citing *District 26, United Mine Workers of Am., Inc. v. Wellmore Coal Corp.,* 609 F.2d 1083, 1085 (4th Cir. 1979)).

## II.  FEDERAL RULE OF CIVIL PROCEDURE 9(b)

"Rule 9(b) requires particularity when pleading 'fraud or mistake,' while allowing 'malice, intent, knowledge, and other conditions of a person's mind to be alleged generally.'" *Ashcroft*, 556 U.S. at 686.  A plaintiff "must, at a minimum, describe the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Bourgeois v. Live Nation Entm't, Inc.*, 3 F. Supp. 423, 435 (D. Md. 2014) (quoting *U.S. ex rel. Owens v. First Kuwaiti Gen'l Trading & Contracting Co.*, 612 F.3d 724, 731 (4th Cir. 2010)).  "Claims that sound in fraud, whether rooted in common law or arising under a statute, implicate the heightened standard of Rule 9(b)." *Layani v. Ouazana*, No. 20-420, 2021

---

[4] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

U.S. Dist. LEXIS 39894, at *61 (D. Md. Mar. 3, 2021); *see Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (quoting FED. R. CIV. P. 9(b) and holding that "the MCPA claim, which sounds in fraud, is subject to the heightened pleading standards of Federal Rule of Civil Procedure 9(b), which requires a plaintiff to plead 'with particularity the circumstances constituting fraud'").  Rule 9(b) serves four purposes:

> First, the rule ensures that the defendant has sufficient information to formulate a defense by putting it on notice of the conduct complained of . . . . Second, Rule 9(b) exists to protect defendants from frivolous suits. A third reason for the rule is to eliminate fraud actions in which all the facts are learned after discovery. Finally, Rule 9(b) protects defendants from harm to their goodwill and reputation.

*Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted).  "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts."  *Id.*

### CONSIDERATION OF EXHIBITS

The parties have attached several exhibits to their pleadings and motions.  The court will address whether it can consider the exhibits at the outset because the exhibits contain background information pertinent to this action.

Plaintiff attached the following exhibits to her Complaint: the Deed of Trust dated December 8, 2006 (ECF No. 3-1 at pp 1-21); the Collateral File From Pinnacle Financial Corporation, dated June 7, 2007 (ECF No. 3-1 at 22-41.)[5]

---

[5] The Complaint references six exhibits, but the Deed of Trust and the Mortgage File are the only documents  attached to the Complaint.  SPS and Rosenberg contend they were not served with the documents purportedly attached to the Complaint.  (ECF Nos. 14-1 at n.1 and 21 at n.2.)

Rosenberg attaches the following exhibits to its motion to dismiss:  Exhibit 1, Deed of Trust dated December 8, 2006 (ECF No. 14-2); Exhibit 2, Balloon Note dated December 8, 2006 (ECF No. 14-3); Exhibit 3, Validation Notice (ECF No. 14-4); Exhibit 4, October 10, 2022, Dispute Letter from Plaintiff to Rosenberg (ECF No. 14-5); Exhibit 6, November 11, 2022, Foreclosure Notice to Plaintiff from Rosenberg. (ECF No. 14-6.)[6]

SPS attached the following exhibits to its motion for judgment on the pleadings: Exhibit A, Balloon Note dated December 8, 2006 (ECF No. 21-1); Exhibit B, Deed of Trust dated December 8, 2006 (ECF No. 21-2); Exhibit C, Assignment of Mortgage from Mortgage Electronic Registration Systems, Inc ("MERS") as nominee for Pinnacle Financial Corporation d/b/a Tri-Star Lending Group, its successors and assigns to Wells Fargo Bank, N.A., in its capacity as Trustee for the RMAC REMIC Trust, Series 2010-1 (ECF No. 21-3); Exhibit D, Assignment of Mortgage/Deed of Trust from Well Fargo Bank N.A., in its capacity as Trustee for the RMAC REMIC Trust, Series 2010-1 to  MERS (ECF No. 21-4); Exhibit E, Corporate Assignment of Deed of Trust from MERS as beneficiary as nominee for Pinnacle Corporation d/b/a Tri-Star Lending Group to FirstKey Mortgage, LLC (ECF No. 21-5); Exhibit F, Corporate Assignment of Deed of Trust from FirstKey Mortgage LLC by Select Portfolio Servicing, Inc., its attorney in fact to Towd Point Mortgage Trust 2016-4, U.S. Bank National Association as Indenture Trustee (ECF No. 21-6); Exhibit G, Appointment of Substitute Trustee which appointed Rosenberg as Substitute Trustee under the Deed of Trust (ECF No. 21-7); Exhibit H, Docket Sheet for State Court Foreclosure Action in the Circuit Court for Howard County, Case No. C-13-CV-22-000992 (ECF No. 21-8); and Exhibit I, Order to Docket Foreclosure Action (ECF No. 21-9).

---

[6] Rosenberg did not attach an "Exhibit 5" to its motion.

"Generally, when a defendant moves to dismiss a complaint under Rule 12(b)(6), courts are limited to considering the sufficiency of allegations set forth in the complaint and the 'documents attached or incorporated into the complaint.'" *Zak v. Chelsea Therapeutics Int'l, Ltd*., 780 F.3d 597, 606 (4th Cir. 2015) (quoting *E.I. du Pont de Nemours & Co*. *v. Kolon Indus.* 637 F.3d 435, 448 (4th Cir. 2011)). Usually, the court does not "consider any documents that are outside of the complaint, or not expressly incorporated therein[.]" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013), *abrogated on other grounds by Reed v. Town of Gilbert*, 576 U.S. 155 (2015).

"But, under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider documents beyond the complaint without converting the motion to dismiss to one for summary judgment." *Loper v. Howard Cty. Pub. Sch. Sys.,* 2021 U.S. Dist. LEXIS 163118 at *13 (D. Md. Aug. 27, 2021) (citing *Goldfarb v. Mayor & City Council of Balt*., 791 F.3d 500, 508 (4th Cir. 2015)). A court may properly consider documents that are "explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (citation omitted).

"When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper." *Goines,* 822 F.3d at 167. "In addition to integral and authentic exhibits, on a 12(b)(6) motion the court 'may properly take judicial notice of matters of public record.'" *Id.* (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). Specifically, the court may take judicial notice of publicly available information on state and federal government websites without converting the motion to one for summary judgment. *See U.S. v. Garcia*, 855 F.3d 615, 621 (4th Cir. 2017) (explaining:

"This court and numerous others routinely take judicial notice of information contained on the state and federal government websites.").

With respect to the Collateral File, the court may consider that document because Plaintiff attached it to her Complaint. All parties attached the Deed of Trust to their filings. The court may properly consider the Note and Deed of Trust, as they are referenced in the Complaint, integral to the parties' relationship/s, and Plaintiff's claims arise out of the Mortgage. Further, Plaintiff does not dispute the authenticity of the Deed of Trust or Note. The court may also take judicial notice of the Deed of Trust because it is a public record.

With respect to the Validation Notice, Dispute Letter, and Foreclosure Notice attached to the Rosenberg Motion, the court may properly consider all of the documents. Plaintiff's Complaint specifically references all three documents and Plaintiff apparently believed she attached them, or intended to attach them, as exhibits to her Complaint when she filed it in state court. *See* (ECF No. 3, ¶¶ 20, 22, and 23.) Further, Plaintiff does not dispute the authenticity of the documents.

With respect to the Assignments, Appointment of Substitute Trustee, Court Docket, and Court Order, the court may properly consider these documents as they are matters of public record. The Assignments and Appointment of Substitute Trustee were recorded with the land records for the Circuit Court for Howard County, Maryland. *See* (ECF Nos. 21-3 – 21-7). Plaintiff does not dispute the authenticity of any of these documents.

There court will therefore consider the exhibits attached to the Complaint, the Rosenberg Motion, and the SPS Motion without converting the pending motions to Rule 56 motions for summary judgment.

# ANALYSIS[7]

## I. OWNERSHIP OF THE LOAN

### A. Authority to Collect on the Loan

All of Plaintiff's claims relate to whether Defendants had authority to collect on Plaintiff's Loan and institute foreclosure proceedings. Plaintiff alleges that Towd Point as identified in the Validation Notice is not the "owner" of the Loan because the allonges attached to the Note reflect that UBS Real Estate Securities Inc. is the owner of the Loan. (ECF No. 3, ¶ 24.) On this basis, Plaintiff alleges that Defendants misled her and provided false and deceptive information about the owner of the debt. *Id.* Plaintiff further alleges that because Towd Point is not the owner of the debt, SPS had no right to collect the debt and Rosenberg did not have a right to issue foreclosure proceedings in relation to same. *Id.* at ¶¶ 24 and 25. Accordingly, central to this court's analysis of Defendants' motions, is resolution of whether Towd Point, through SPS and Rosenberg, had authority to collect on the Loan.

SPS and Rosenberg assert that contrary to Plaintiff's allegations, there was never a break in the chain of indorsements or assignments of the Note, and Towd Point is the proper holder of same. SPS produced the following chart in its motion summarizing the transfers of the Note since origination of the Loan:

---

[7] SPS asserts, and Plaintiff does not contest, that Maryland law applies to Plaintiff's claims. The court agrees. Accordingly, the court will apply Maryland law to Plaintiff's state law claims. *See* (ECF No. 21 at 11-12.)

| **Assignor** (from) | **Assignee** (to) | **Form of Transfer** | **Citation to Complaint and Exhibit Thereto** | **Citation to Exhibits Hereto** |
|---|---|---|---|---|
| Pinnacle Financial Corporation d/b/a Tri-Start [sic] Lending Group | IMPAC Funding Corporation | Note indorsed "without recourse, pay to the order of IMPAC Funding Corporation" | ¶¶ 18.a, 18.c, 18.d, and Ex. 2 | Ex. B at p. 3, 9, and 10 (duplicates) |
| IMPAC Funding Corporation | UBS Real Estate Securities, Inc. | Allonge to Note indorsed "pay to the order of UBS Real Estate Securities, Inc. without recourse" | ¶ 18.f, and Ex. 2 | Ex. B at p. 4 |
| UBS Real Estate Securities, Inc. | Wells Fargo Bank, N.A., not in its individual capacity but solely as trustee from the RMAC REMIC Trust, Series 2010-1 | Allonge to Note indorsed "pay to the order of Wells Fargo Bank, NA not in its individual capacity but solely as Trustee for the RMAC REMIC Trust, Series 2010-1" | ¶ 18.g, and Ex. 2 | Ex. B at p. 5 |
| Wells Fargo Bank, N.A., not in its individual capacity but solely as Trustee from the RMAC REMIC Trust, Series 2010-1, by Rushmore Loan Management Services, LLC, its appointed attorney-in-fact | Blank | Allonge to ote [sic] indorsed "in blank" | ¶ 18.h, and Ex. 2 | Ex. B at p. 8 |

(ECF No. 21 at 4-5.)   Additionally, SPS included the below chart summarizing the recorded assignments of the Deed of Trust:

| Date of Recordation | Grantor (from) | Grantee (to) | Citation to Exhibits Hereto |
|---|---|---|---|
| July 30, 2013 | Mortgage Electronic Registration Systems, Inc., as nominee for Pinnacle Financial Corporation d/b/a Tri-Star Lending Group, it's successors and assigns | Wells Fargo Bank, N.A., not in its individual capacity but solely as trustee from the RMAC REMIC Trust, Series 2010-1 | Exhibit "C" |
| October 5, 2016 | Wells Fargo Bank, N.A., not in its individual capacity but solely as trustee from the RMAC REMIC Trust, Series 2010-1 | Mortgage Electronic Registration Systems, Inc. | Exhibit "D" |
| June 11, 2021 | Mortgage Electronic Registration System, as nominee for Pinnacle Financial Corporation D/B/A Tri-Star Lending Group, Its successors and assigns | FirstKey Mortgage, LLC | Exhibit "E" |
| June 11, 2021 | FirstKey Mortgage, LLC by Select Portfolio Servicing, Inc., its attorney-in-fact | Towd Point Mortgage Trust 2016-4, U.S. Bank National Association as Indenture Trustee. | Exhibit "F" |

*Id.* at 6.

SPS and Rosenberg assert that Towd Point is the holder of the Note, which entitled them to collect on the Loan and institute foreclosure proceedings, and that Plaintiff's position to the contrary is a result of her misunderstanding of Maryland law.  (ECF No. 14-1 at 4; 21 at 13.)  The Complaint alleges that the Note contains a Note Allonge that reflects an endorsement from Wells Fargo Bank, N.A., in its capacity as sole Trustee for the RMAC and REMIC Trust, Series 2010 in blank.  (ECF No. 3, ¶ 18i.)  SPS and Rosenberg assert they are entitled to collect and enforce Plaintiff's Loan (on behalf of Towd Point) because the Note includes an indorsement in blank; and they are the holders in possession of the Note.  (ECF Nos. 14-2 at 5; 21 at 15.)

In assessing the parties' claims and arguments, the court finds it helpful to review the securitization process of the mortgage industry.  The securitization process is well-settled in Maryland:

> Securitization starts when a mortgage originator sells a mortgage and its note to a buyer, who is typically a subsidiary of an investment bank. The investment bank bundles together the multitude of mortgages it purchased into a "special purpose vehicle," usually in the form of a trust, and sells the income rights to other investors. A pooling and servicing agreement establishes two entities that maintain the trust: a trustee, who manages the loan assets, and a servicer, who communicates with and collects monthly payments from the mortgagors.

*Blackstone v. Sharma,* 461 Md. 87, 137-38 (2018) (quoting *Anderson v. Burson,* 424 Md. 232, 237 (2011)).

***

> In *Deutsche Bank Nat. Tr. Co. v. Brock*, this Court clarified that a "special purpose vehicle 'is a business entity that is exclusively a repository for the loans; it does not have any employees, offices, or assets other than the loans it purchases.'" 430 Md. 714, 718, 63 A.3d 40 (2013) (quoting *Anderson*, 424 Md. at 237 n. 7). *See also* Christopher L. Peterson, *Predatory Structured Finance*, 28 Cardozo L. Rev. 2185, 2261 (2007) ("**In a typical transaction, a third party company is hired to service the loan — meaning**

> **collect the debt. Much like a 'debt collector' as defined under federal law, mortgage loan servicers are not chosen by consumers**. A consumer does not have the right to refuse to do business with a company granted servicing rights by a **securitization** pooling and servicing agreement.")

*Id.* (Emphasis added in original citation.)

***

> The securitization process of the mortgage industry highlights that a trust, such as a foreign statutory trust, serves a specific purpose in the mortgage industry. Indeed, such trusts are called "special purpose vehicles" because they simply hold the loans managed by the trustees and collected by the mortgage servicers. *See Deutsche Bank*, 430 Md. at 718. In other words, the trust solely constitutes a pool of loans that will eventually be sold off to investors. *See* [Peterson, 28 Cardozo L. Rev.] at 2209. The trustees and substitute trustees are the actors that manage and control the trust assets. *See Anderson*, 424 Md. at 237. The mortgage servicer, as opposed to the statutory trust, acts as the debt collector and interacts with the borrowers. *See* Peterson, 28 Cardozo L. Rev. at 2261.

*Id.*

Here, both the Note and Deed have been securitized. The transfers of the Note and Assignments of the Loan leave Towd Point as the trust which holds Plaintiff loan; SPS as the servicer which interacts with, and collects payments on, the Loan from Plaintiff; and Rosenberg as Substitute Trustee that manages the Loan assets (*i.e.*, the Subject Property).

Plaintiff alleges:

> SPS began servicing the loan in the fall of 2016.

> Ms. Bowman was current on her loan until on or before May 2020, when the world was hit by a pandemic, Covid-19. Ms. Bowman is self-employed running a dog day care and her business halted to a stop by Covid-19.

> Ms. Bowman did reach out to SPS for Covid1-19 related loss mitigation options. SPS did offer her a Trial Period Payment Plan for 3 months, May, June and July 2022.

SPS refused to provide Ms. Bowman with terms of the loan modification and told her to make the three payments and only then would they provide the terms of the agreement.  Ms. Bowman did make all three payments on time.

Ms. Bowman, concerned that SPS was not accurately calculating the amount owed and concerned that SPS even had authority to collect the debt on behalf of an unknown creditor, asked SPS to provide the Collateral File.  Ms. Bowman originally requested to see the Collateral File on March 24, 2022, but SPS failed to comply withat [sic] that request. Eventually SPS did provide what it called a "copy" of the original note but that copy contained no endorsements leading to Ms. Bowman's believe [sic] that SPS had no authority to enforce the Note.  SPS did provide the Collateral File (Ex 2).  This file contained what SPS claims is a true and accurate copy of the original Note.

By failing to provide proof as to the purported creditor to whom the debt is owed is misleading and deceptive as is the false claim that the subject Note is owned by Towd Point Mortgage Trust 2016-4, U.S. Bank National Association as Indenture Trustee when the Allonges reflect ownership by UBS Real Estate Securities Inc.

SPS and Rosenberg are threatening Ms. Bowman with a foreclosure action when it claims a different owner from that claimed by Defendants.

(ECF NO. 3 ¶¶ 14-18, 24-25.)

Based on Plaintiff's allegations, her discontent with, and accordingly claims against, Defendants are based on Plaintiff's belief that Towd Point is not the owner of her Loan.  Based on her belief that Towd Point is not the owner of her Loan, Plaintiff alleges that Defendants deceived or made material misrepresentations to her about the true creditor of the Loan.  Plaintiff's position is flawed for several reasons.

First, neither SPS as a servicer nor Rosenberg as Substitute Trustee were required to provide Plaintiff with the identity of the owner of the Loan debt.  The fact that Towd Point is the last entity assigned the Deed of Trust, but is not listed on the Note indorsements, is legally immaterial and does not support Plaintiff's claim of deception or misrepresentation.  *See Svrcek v.*

*Rosenberg,* 203 Md. App. 705, 727 (2012) (holding "[t]hus, the assignment of the deed of trust

from Taylor, Bean & Whitaker Mortgage Corp. to Citibank, N.A. as Trustee, executed on October

22, 2009, and filed in the circuit court on October 30, 2009, is of no consequence with respect to

appellees' [Rosenberg] right to initiate the foreclosure proceeding.)   Indeed, it is the Note that

leads and the Deed that follows, not the other way around.   Therefore, a holder of a note may

enforce the rights of the deed of trust securing same.   The Maryland Supreme Court in *LeBrun v.*

*Prosise*, 197 Md. 466, 474-75 (1951), explained the legal effect of an assignment of a deed of trust:

> This deed of trust secures a negotiable note, whoever may be the
> holder. The deed of trust need not and properly speaking cannot be
> assigned like a mortgage, *cf. Jones on Mortgages*, § 1222;  *Glenn*
> *on Mortgages*, § 338, but the note can be transferred freely, and,
> when transferred, carries with it the security, if any, of the deed of
> trust, which was true of a mortgage note before the Act of 1892, ch.
> 392, amended by Acts of 1910, ch. 719, now section 26. *Demuth v.*
> *Old Town Bank*, 85 Md. 315, 37 A. 266. "The note and the mortgage
> are inseparable; the former as essential, the latter as an incident. An
> assignment of the note carries the mortgage with it, while an
> assignment of the latter alone is a nullity."

Having established that the Deed follows the Note, the court now turns to whether the Note

authorized SPS and Rosenberg to enforce (collect on) the Loan.   The court finds *Deutsche Bank*

*Nat'l Trust Co. v. Brock*, 430 Md. 714, 729-30 (2013) instructive.   The facts in *Brock* are very

similar to the facts of the present case.   The plaintiff in *Brock* executed a promissory note secured

by a deed of trust.   *Id.* at 718.   The allonge attached to the note contained three undated

indorsements the last of which was a blank indorsement by Impac Funding Corporation.   *Id.* at

719.   The plaintiff fell behind on her loan payments and the loan servicer appointed substitute

trustees to initiate foreclosure proceedings, which the substitute trustees did.   *Id.* at 721.   The

plaintiff in *Brock* filed a complaint against the trust, loan servicer and substitute trustees alleging

that they lacked authority to enforce the loan and institute foreclosure proceedings.  The question before the Supreme Court of Maryland was:

> Whether an entity in possession of a promissory note indorsed in blank — the most common type of indorsement for thousands of notes owned by mortgage-backed security trusts — is not a holder and is merely a non-holder in possession, in conflict with Title 3 of the Maryland UCC and a misinterpretation of this Court's decision in *Anderson v. Burson*, 424 Md. 232, 35 A.3d 452 (2012)?[8]

Under Maryland law if an indorsement "identifies a person to whom the instrument is payable it is a 'special indorsement.'"  MD. CODE ANN., COM. LAW § 3-205(a).  If the indorsement does not identify a specific person or entity, it is considered a "blank indorsement."  *Id.* § 3-205(b).  "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed."  *Id.*   Additionally, under Maryland law, a promissory note may be enforced by:

> (i) the holder of the instrument, (ii) a nonholder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to § 3-309 or § 3-418(d). A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

---

[8] The Maryland Supreme Court explained:

> In *Anderson*, we considered the enforcement rights of a reputed transferee in possession (also Deutsche Bank) of an unindorsed note. Notably, we determined in *Anderson* that, due to the lack of indorsement on the note assigning the note to Deutsche Bank, Deutsche Bank was not a holder of the note, and had not received it by negotiation. 424 Md. at 247-48, 35 A.3d at 461-62. We noted that "[a] nonholder in possession . . . cannot rely on possession of the instrument alone as a basis to enforce it." *Id.* at 248-49, 35 A.3d at 462. Rather, because "[t]he transferee's right to enforce the instrument derives from the transferor (because by the terms of the instrument, it is not payable to the transferee)," those rights must be proved. *Id.* We stated, "The transferee does not enjoy the statutorily provided assumption of the right to enforce the instrument that accompanies a negotiated instrument, and so the transferee 'must account for possession of the unindorsed instrument by proving the transaction through which the transferee acquired it.'" *Id.* at 249, 35 A.3d at 462 (quoting Md. Code, Com. Law Art., § 3-203 cmt. 2).

*Brock*, 430 Md. at 732.

*Id.* § 3-301.

As the *Brock* court explained:

> In this context, a "holder" is "[t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession." *Id*. at § 1-201(b)(21)(i). A promise or order is payable to bearer if it states that: (a) it is payable to bearer or to cash; (b) indicates that an individual or entity in possession of the promise or order is entitled to payment; (c) does not state a payee; or, (d) otherwise indicates that it is not payable to an identified person. *Id*. at § 3-109(a). Thus, the person in possession of a note, either specially indorsed to that person or indorsed in blank, is a holder entitled generally to enforce that note.

430 Md. at 729-30.

The *Brock* court held that the loan servicer was a holder of the note and, therefore, entitled to enforce it. The court further held that because the loan servicer was a holder of the note, any remaining disputes of fact were not material to the resolution of the case:

> A deed of trust securing a negotiable promissory note "cannot be transferred like a mortgage; rather, the corresponding note may be transferred, and carries with it the security provided by the deed of trust." *Anderson*, 424 Md. at 246, 35 A.3d at 460 (citing *Le Brun v. Prosise*, 197 Md. 466, 474, 79 A.2d 543, 548 (1951)). Thus, once the note is transferred, "the right to enforce the deed of trust follow[s]." *Svrcek v. Rosenberg*, 203 Md. App. 705, 727, 40 A.3d 494, 507 (2012); Md. Code (1975, 2002 Repl. Vol.), Com. Law Art., § 9-203(g) & cmt. 9 (codifying "the common-law rule that a transfer of an obligation secured by a security interest or other lien on . . . real property also transfers the security interest or lien"). As a result, because a negotiable promissory note secured by a deed of trust is governed by the Commercial Law Article of the Maryland Code, so too is the resolution of the parties' dispute in the present case. *Shepherd v. Burson*, 427 Md. 541, 551, 50 A.3d 567, 573 (2012); *Anderson*, 424 Md. at 246, 35 A.3d at 460. We determine that, contrary to the panel of the Court of Special Appeals, BAC is a holder of the Note and that, therefore, the remaining disputes of fact are not material to the resolution of this case.

430 Md. at 728.

This court notes the factual similarities between *Brock* and the present case.  Plaintiff, just like the *Brock* plaintiff, executed promissory notes that contained multiple undated indorsements, the last of which was a blank indorsement.  Similar to the plaintiff in *Brock,* Plaintiff alleges that SPS and Rosenberg did not have authority to enforce or collect on the Loan because Towd Point is not identified in the indorsements attached to the Note.  The Maryland Supreme Court noted that, "Brock contends that, regardless of which entity is the holder of the Note, only the owner may enforce the Note and bring an action to foreclose." 430 Md. at 730.  Notwithstanding, Brock's position, the Maryland Supreme Court explained:

> The Commercial Law Article makes clear, however, the distinction between a holder and an owner. As the Comment to § 3-203 states, "[t]he right to enforce an instrument and ownership of the instrument are two different concepts." The holder of a note is "entitled to enforce the instrument even [if it is] not the owner of the instrument or is in wrongful possession of the instrument." *Id*. at § 3-301. *See also In re Veal*, 450 B.R. 897, 909 (B.A.P. 9th Cir. 2011) ("Article 3 does not necessarily equate the proper person to be paid with the person who owns the negotiable instrument."); *SMS Financial, LLC v. ABCO Homes, Inc*., 167 F.3d 235, 238-39 (5th Cir. 1999) (noting that a party's status as a holder and its attendant right to enforce an instrument is separate from the party's status as the owner of that instrument); *In re Walker*, 466 B.R. 271, 280 (Bankr. E.D. Pa. 2012) ("[T]he borrower's obligation is to pay the person entitled to enforce the note (who need not be the 'owner' of the note)."); *In re Simmerman*, 463 B.R. 47, 60 (Bankr. S.D. Ohio 2011) (noting that "the holder of the note may differ from the owner of the note"). As the court noted in *In re Veal*, "[u]nder established rules, the maker [of a note] should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note." 450 B.R. at 912. Here, Brock does not contend that she does not know to which entity her payments are due, and thus, the question of which entity owns the Note is irrelevant to the resolution of the present case.

430 Md. at 730-31.

Based on Plaintiff's allegations, she knew that her payments were owed to SPS and made Loan payments to SPS for approximately four years before she defaulted on the Loan.  Only after

she defaulted did Plaintiff challenge SPS' authority to collect on the Loan.  Additionally, because

SPS sent a copy of the Note to Plaintiff, she knew that SPS was in possession of the Note.  Because

SPS (on behalf of Towd Point) was a holder of the Note, under the holding of *Brock,* it was entitled

to enforce same.  Further, because the right to enforce the Deed of Trust follows transfer of the

Note, Rosenberg, acting on behalf of Towd Point as the Substitute Trustee, had authority to initiate

foreclosure proceedings against Plaintiff.  *Svrcek*, 203 Md. App. At 727.  The question of who

owns the Note is not relevant to whether Defendants were authorized to enforce the Loan and

institute foreclosure proceedings.  *Brock,* 430 Md. at 731.

> As *Brock* explains:

> > [T]he present case involves a Note that contains all necessary indorsements. There is no gap in the indorsements purporting to transfer the Note and, indeed, Brock does not argue in this Court that the indorsements were insufficient to negotiate the Note to BAC. BAC is in possession of the Note that is indorsed in blank. BAC is therefore the holder of the Note, and, as the holder, is a person or entity entitled to enforce it. *See* Md. Code (1975, 2002 Repl. Vol.), Com. Law Art., §3-301. Thus, whether the Trust is (or is not) the owner of the Note is irrelevant for present purposes.

430 Md. at 732-33.

> Here, although Plaintiff alleges there was a "break" in the chain of transfers of the Note,

such a contention is not supported by the Exhibits or anything else offered for the court's

consideration.  Plaintiff alleges:

> > Allonge to Note, containing no hole punches, undated, reflects and endorsement from UBS Real Estate Securities Inc. to Wells Fargo Bank, N.A., not in its individual capacity but solely as Trustee for the RMAC REMIC Trust, Series 2010-1. The Allonge references a Note dated May 31, 2007, however the subject Note is dated December 8, 2006, in the amount of $510,000.00. Loan Number 1103667261 and 335987370.  Based on the information noted on the Allonge, this Allonge is not for the subject loan and therefore this is a break in the chain of ownership.

(ECF No. 3, ¶ 18g.)

Plaintiff's allegation is inconsistent with the Allonge to Note attached as Exhibit A at page 5 to the SPS Motion (ECF No. 21-1 at 5.)  Although the allonge lists the Note Date as May 31, 2007, when the Note was executed December 8, 2006, the balance of the information is consistent with the origination of the Note.  The Loan Number, Originator, Original Loan Amount, and Property Address are all consistent with the original Note.  Accordingly, the court finds there is no plausible basis on which to reasonably find or conclude that a "break" in the "chain of ownership" existed as Plaintiff alleges, or that any defect in Exhibit A to the SPS Motion diminishes Defendants' enforcement entitlement.  *See Goines*, 822 F.3d at 167 (explaining "[w]hen the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations in the complaint is proper.")

Just as the *Brock* plaintiff's arguments failed, Plaintiff's arguments also fail.  All of Plaintiff's claims rely upon the same alleged misrepresentations and intentional omissions of material fact:

> a. wherein the purported creditor does not own the loan pursuant to the Collateral File provided by SPS.
>
> b. Rosenberg moved forward with a foreclosure action when it failed to verify the debt as requested by Ms. Bowman.
>
> c. SPS and Rosenberg claim that Towd Point Mortgage Trust 2016-4, U.S. Bank National Association as Indenture Trustees s[sic] the creditor of the loan but fail to provide any proof to substantiate that claim as requested by Ms. Bowman.
>
> d. SPS and Rosenberg disparaged and embarrassed and violated Ms. Bowman's privacy by issuing notice of the foreclosure action to 3rd parties.

(ECF No. 3, ¶¶ 50, 54, 59, 61.)

Plaintiff has failed to demonstrate or plausibly allege that Defendants deceived her or made material misrepresentations to her regarding the Loan or in connection with collecting on same. Towd Point is the holder of the Note and is entitled, through SPS and Rosenberg, to enforce both the Note and rights under the Deed of Trust. Plaintiff alleges that she was provided with the Collateral File, which contained the original Note; that file does not contain any information that Plaintiff contends is untrue. Instead, Plaintiff relies on the Collateral File as true to support her position that Towd Point is not the owner of the Note because it is not listed in the allonges. As detailed above, Towd Point was not required to be on the Note transfers — it was assigned the Deed of Trust, which follows the Note. Further, the information in the Validation Notice is not incorrect: Towd Point is the trust that holds the Loan, Rosenberg is the debt collector, and SPS is the loan servicer. The court finds that Plaintiff does not allege a misrepresentation or material omission by any Defendant, because the information provided to Plaintiff was not inaccurate. Plaintiff does not dispute this. Her allegations do not attack the authenticity of the Collateral File or the Assignments of the Deed of Trust; rather, Plaintiff's allegations attack the effect of the transfers of the Note and assignments of the Deed of Trust. As explained, Plaintiff's attack is misdirected. Plaintiff's allegations and the parties' exhibits are fatal to all of Plaintiff's claims, (save the FDCPA claim against Rosenberg, *see discussion, infra*) because she cannot allege deception or misrepresentation on the part of Defendants. The court will address the parties' remaining arguments.

### B. Standing

Both SPS and Rosenberg argue that Plaintiff lacks standing to challenge any transfers of the Note or assignments of the Loan. (ECF No. 14-1 at 5 and 21 at 16.) Rosenberg asserts that if an allonge to the Note contains a typographical error, Plaintiff has no standing to challenge its

validity.  (ECF No. 14-1 at 6.)  SPS argues that because Plaintiff was not a party to, or intended beneficiary of, any transfer or assignment of the Note and Deed of Trust, she lacks standing to challenge their validity through this litigation.  (ECF No. 21 at 16-17.)  SPS asserts that Plaintiff's lack of standing offers another basis for dismissal of this action as a matter of law.  *Id.* at 17.

This court has consistently held that a plaintiff lacks standing to challenge assignment or transfer of a note or deed of trust.  *See Powell v. Countrywide Bank,* 2016 U.S. Dist. LEXIS 138838, 2016 WL *11 (D. Md. Oct. 4, 2016) (addressing the plaintiffs' allegations that the "assignments of their Deed of Trust were not properly executed for a variety of reasons" and holding that because plaintiffs were not a party to the assignment or an intended beneficiary of same, they lacked standing to challenge the validity of the assignments.)  *See also Quattlebaum v. Bank of Am., N.A.*, No. CIV.A. TDC-14-2688, 2015 U.S. Dist. LEXIS 29978, 2015 WL 1085707, at *4 (D. Md. Mar. 10, 2015) (explaining: "What the lender chooses to do with that entitlement— whether to keep it or to sell it to another financial institution—is a decision [the plaintiff] has no standing to challenge."); *Wolf v. Fed. Nat'l Mortgage Ass'n,* 512 Fed. Appx. 336, 342 (4th Cir. 2013) (holding that a mortgagor lacks standing to challenge the propriety of the assignment of the note).

Here, Plaintiff was not a party to the assignments or transfers of the Note and Deed of Trust.  Accordingly, she lacks standing to challenge the validity of the assignments.  This is not to say that Plaintiff lacks standing to challenge the validity of her debt as provided for by law, but to the extent Plaintiff's allegations rest on, or question, the propriety of the assignments and transfers of the Note and Deed of Trust, she lacks standing to do so.

## II.   VIOLATIONS OF THE MCPA (COUNT I)

"To state a claim under the MCPA, a plaintiff must adequately plead that (1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the representation, and (3) doing so caused the plaintiff actual injury." *Turner v. JPMorgan Chase, N.A.*, No. TDC-14-0576, 2015 WL 5021390, at *4 (D. Md. Aug. 21, 2015) (citing *Currie v. Wells Fargo Bank*, 950 F. Supp. 2d 788, 796 (D. Md. 2013)).

"Under the CPA, a merchant 'may not engage in any unfair, abusive, or deceptive trade practice' in the sale of consumer goods." *In re Petition of Cricket Wireless, LLC*, 2023 Md. App. LEXIS 590 at *10 (Sept. 5, 2023) (quoting MD. CODE ANN., COM. LAW § 13-301 (2023)). MD. CODE ANN., COM. LAW § 13-301(1) "defines unfair or deceptive trade practices as, *inter alia*: (1) 'False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers;' and (2) 'Failure to state a material fact if the failure deceives or tends to deceive.'" *Id.* (quoting MD. CODE ANN., COM. LAW § 13-301(1)); *see Bank of America, N.A. v. Jill P. Mitchell Living Trust*, 822 F. Supp. 2d 505, 535 (D. Md. 2011) (noting that "both misrepresentation and omission claims are 'unfair or deceptive' trade practices under the MCPA").

Rosenberg asserts that Plaintiff's MCPA claim fails because Rosenberg is not a "merchant" as defined by section 13-101 of the MCPA, and the Complaint does not allege otherwise. (ECF No. 14-1 at 9.)  Rosenberg further asserts that pursuant to section 13-104(1), as a law firm, it is exempt under the MCPA when engaged in professional services.  *Id.*  Rosenberg argues the exemption applies because it was retained to prosecute a foreclosure and every action with respect to Plaintiff has been in relation to that professional service.  *Id.*

Plaintiff alleges:

> SPS is a "Merchant" as defined by C.L. § 13-1019g) as SPS directly or indirectly offers or makes available to consumers, consumer goods, services, realty, or credit as SPS is the services or residential mortgage loans.

(ECF No. 3, ¶ 32.)

Section 13-101(g) of the MCPA provides:

> **(g)**
> **(1)** "Merchant" means a person who directly or indirectly either offers or makes available to consumers any consumer goods, consumer services, consumer realty, or consumer credit.
> **(2)** "Merchant" includes a person:
>> **(i)** Who directly or indirectly purchases or offers to purchase any consumer goods or consumer realty from a consumer; and
>> **(ii)** Whose business includes paying off consumer debt in connection with the purchase of any consumer goods or consumer realty from a consumer.

Section 13-104 (1) of the MCPA provides:

> This title does not apply to:
> **(1)** The professional services of a certified public accountant, architect, clergyman, professional engineer, lawyer, veterinarian, insurance company authorized to do business in the State, insurance producer licensed by the State, Christian Science practitioner, land surveyor, property line surveyor, chiropractor, optometrist, physical therapist, podiatrist, real estate broker, associate real estate broker, or real estate salesperson, or medical or dental practitioner

Plaintiff alleges that SPS is a merchant, but no such allegations exist against Rosenberg. Additionally, as a law firm rendering debt collection legal services, Rosenberg is exempt from the MCPA. Accordingly, Plaintiff's MCPA claims fail for these reasons, in addition to the bases articulated above regarding the ownership of the Loan. The MCPA claim against Rosenberg and SPS will be dismissed.

**III.     VIOLATIONS OF THE MMFPA (COUNT II) AND FRAUD (COUNT III)**

Both the MMFPA and fraud are governed by Rule 9(b)'s heightened pleading standards as relayed above.  In order to state a claim under the MMFPA, a plaintiff "must plead the elements of common law fraud." *Galante v. Ocwen Loan Servicing, LLC,* 2014 U.S. Dist. LEXIS 98049 at *80 (D. Md. Jul. 1, 2014). To state a claim for common law fraud in Maryland, a plaintiff must allege "(1) that the defendant made a false representation to the plaintiff, (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth, (3) that the misrepresentation was made for the purpose of defrauding the plaintiff, (4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation." *Jones v. Specialized Loan Servicing, LLC*, 2023 U.S. Dist. LEXIS 17672, *11-12 (D. Md. Feb. 1, 2023) (citing *Galante*, 2014 U.S. Dist. LEXIS 98049 at *80).

Rosenberg asserts that Plaintiff's MMFPA claim fails because the Complaint cites to Maryland Real Property Code at section 7-401(d), which defines mortgage fraud during either the mortgage lending process or the mortgage closing.  (ECF No. 14-1 at 9.)  Rosenberg argues that the MMFPA is intended to prevent fraud during mortgage origination and Plaintiff's allegations pertain to foreclosure proceedings following default on the Loan.  *Id.*  Rosenberg argues that because Plaintiff does not allege that SPS or Rosenberg was involved with her loan origination, the claim should be dismissed with prejudice.  *Id.*

With respect to Rosenberg's argument that the MMFPA does not apply to foreclosure actions. The court disagrees.  *See Newsom v. Brock & Scott, PLLC*, 253 Md. App. 181, 220 (discussing the MMFPA and explaining that "[a]lthough nearly all of the activities included within the statute's definition of 'mortgage lending process' describe conduct that takes place before a

loan is considered in default, the term 'servicing' has been applied to the loan collection process when a deed of trust is in default."); *Marchese v. JPMorgan Chase Bank, N.A.,* 917 F. Supp. 2d 452, 469 (D. Md. 2013) (explaining that, "although Chase seeks to curtail the breadth of the statute to exclude loan servicing with regard to defaulting borrowers, this Court has held that 'the plain language of the statute clearly countenances post-closing servicing activities.' Chase concedes that foreclosure is a 'post-servicing activity' under the MMFPA") (quoting *Stovall v. Suntrust Mortgage, Inc.*, 2011 U.S. Dist. LEXIS 106137, 2011 WL 4402680, at *10 (2011)). Plaintiff's MMFPA will not be dismissed with prejudice on this basis.

With respect to Plaintiff's fraud claim, Rosenberg asserts that the only allegedly misrepresentation attributed to Rosenberg is that the purported creditor did not own the Loan. (ECF No. 14-1 at 10.) Rosenberg further asserts that Plaintiff fails to allege that she relied on any representation made by Rosenberg to her detriment. *Id.* Rosenberg argues further that there is no evidence that Plaintiff suffered any harm because the foreclosure case is ongoing, and Plaintiff is still the (equitable) owner of the Subject Property. *Id.* Rosenberg's arguments regarding Plaintiff's claim for fraud are addressed earlier in the court's analysis regarding ownership of the Loan. The fraud count will therefore be dismissed as against Rosenberg.

SPS avers that Plaintiff fails to meet the heightened pleading standard of Rule 9(b), that Plaintiff's MMFPA claim fails in the absence of some intentional misrepresentation of material fact by SPS, and that Plaintiff fails to allege facts that SPS had knowledge of any alleged misstatement's falsity or intent to defraud. (ECF No. 21 at 23, 24.) SPS's arguments that Plaintiff's MMFPA and fraud claims fail are resolved by the court's analysis regarding ownership of the Loan, *supra*. Because Plaintiff does not adequately allege that SPS made intentional

material misstatements to Plaintiff in producing the Collateral File, it follows that Plaintiff's allegations are insufficient to satisfy the applicable heightened pleading standard.

## IV. VIOLATIONS OF THE FDCPA (COUNT IV)

To state a claim for relief under the FDCPA, a plaintiff must allege that "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt[] collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Stewart v. Bierman*, 859 F.Supp.2d 754, 759 (D. Md. 2012).

Plaintiff alleges that Rosenberg moved forward with foreclosure proceedings without first verifying the debt. (ECF No. 3, ¶¶ 50b, 54b, 59b, and 61b.) The Validation Notice indicates that the debt must be disputed by September 29, 2022. (ECF No. 14-4.) Rosenberg argues that because Plaintiff did not send a dispute letter until October 10, 2022, Rosenberg was entitled to conclude the debt was valid and to proceed with foreclosure proceedings. (ECF No. 14-1 at 7.) Rosenberg further argues that it is not required to respond to, or cease collection activity based on, an untimely dispute. *Id.*

Pursuant to § 1692g(a) of the FDCPA:

> **(a) Notice of debt; contents.** Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—
>
> **(1)** the amount of the debt;
> **(2)** the name of the creditor to whom the debt is owed;
> **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
> **(4)** a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of

such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Pursuant to § 1692g(b) of the FDCPA

(b) Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

Plaintiff alleges:

Rosenberg & Associates issued an undated letter to Ms. Bowman claiming it was a debt collector and it was collecting a debt it claimed was owed to Towd Point Mortgage Trust 2016-4, U.S. Bank National Association as Indenture Trustee.

Ms. Bowman's attorney issued a timely response to Rosenberg requesting that the debt be validated pursuant to the Fair Debt Collection Practices Act ("FDCPA"). To date, despite moving forward with the filing of the foreclosure complaint against Ms. Bowman, Rosenberg has failed to respond to this request for verification of the debt.

(ECF No. 3, ¶¶ 20-21.)

Based on the allegations, coupled with the undated Validation Notice, Plaintiff has sufficiently alleged a claim against Rosenberg for violation of the FDCPA.  Taking the allegations in the Complaint as true, Plaintiff disputed the debt within 30 days of receipt of the Validation Notice.  Rosenberg admits that it did not respond or cease the foreclosure proceedings as required by § 1692g(b).  Therefore, Plaintiff has alleged that Rosenberg as a debt collector committed an act or omission prohibited by the FDCPA.  Rosenberg's contention that the Dispute Letter was untimely does not ably refute Plaintiff's allegation that she disputed the debt within 30 days of receiving the notice as required by the FDCPA.  The Validation Notice is undated; therefore, without the benefit of discovery, the court is unable to ascertain whether Plaintiff disputed the debt within 30 days of receipt of the notice.  At this stage of the litigation, the court therefore accepts Plaintiff's allegation that she disputed the debt timely.   To be clear, based on the court's analysis regarding the ownership of the Loan, *supra,* to the extent Plaintiff's FDCPA claim is premised on a deceptive practice or misrepresentation, the FDCPA claim will be dismissed.  However, to the extent Plaintiff's FDCPA claim is premised on Rosenberg's failure to comply with the requirements of section1692g(d), at this juncture of the litigation, Plaintiff has stated a claim against Rosenberg for violation of the FDCPA.

Plaintiff also alleges that Rosenberg violated her privacy by issuing the Notice to Occupant. (ECF No. 3, ¶¶ 50d, 54d, and 59d.)  Rosenberg argues that it was complying with Maryland law in issuing the Notice to Occupant and, therefore, Plaintiff's claim fails as a matter of law.  (ECF No. 14-1 at 8.)

The Complaint alleges:

> Rosenberg issued a letter to Ms. Bowman's home addressed to "All Occupants" containing a stamp on the outside of the envelope stating in all capital letter "Important Notice to All Occupants Foreclosure Information Enclosed Open Immediately".  Ms.

> Bowman's USPS letter carrier express concern to Ms. Bowman over this letter, asking Ms. Bowman if she was all right. This caused Ms. Bowman to be ashamed and embarrassed. Ms. Bowman lives in a small town where she ahs lived all her life. Ms. Bowman is in fear that if word gets out as to the foreclosure, she could lose clients.

(ECF No. 3, ¶ 23.)

Pursuant to MD. CODE ANN., REAL PROP. § 7-105.11(b)(2)-(3):

> (2) The written notice required by this subsection shall be:
>    (i) A separate document;
>    (ii) Printed in at least 12 point type; and
>    (iii) Sent by first-class mail.
> (3) The outside of the envelope containing the written notice required by this subsection shall state, on the address side, in bold, capitalized letters in at least 12 point type, the following: "IMPORTANT NOTICE TO ALL OCCUPANTS: FORECLOSURE INFORMATION ENCLOSED. OPEN IMMEDIATELY.".

Although Plaintiff may have suffered embarrassment from the foreclosure Notice, Rosenberg was merely complying with the requirements of Maryland law in issuing the Notice to Occupants.  Accordingly, Plaintiff's FDCPA claim fails on this basis.

SPS asserts that Plaintiff's FDCPA claim against it fails because SPS is not a "debt collector" as defined by the Act.  (ECF No. 21 at 25.)

Section 1692a(6) provides in relevant part:

> (6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph, the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts. For the purpose of section 808(6) [15 USCS § 1692f(6)], such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business

the principal purpose of which is the enforcement of security interests. The term does not include— . . .

> (**F**) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement; (ii) concerns a debt which was originated by such person; (iii) concerns a debt which was not in default at the time it was obtained by such person; or (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

Plaintiff alleges:

> Defendant Select Portfolio Servicing, Inc. ("SPS") is a mortgage servicing company . . . SPS is a "loan servicer" tasked with performing functions such as collecting payments, paying taxes and insurance payments, loss mitigation activities that are commonly known in the mortgage industry as "servicing."

> As a mortgage servicer, SPS is responsible for the day-to-day management of a mortgage loan, including collecting payments from borrowers, holding funds in escrow accounts for insurance and tax purposes, remitting such escrow funds, interacting with borrowers, and administering the mortgage foreclosure process. Mortgage servicers are also responsible for overseeing and implementing loss mitigation opportunities for borrowers to avoid loan delinquency and foreclosure.

> At all times relevant to this action, SPS is action as the agent of the claimed owner of the subject loan, Towd Point Mortgage Trust, 2016-4, U.S. National Association as Indenture Trustee.

> SPS began servicing the loan in the fall of 2016.

> As debt collectors subject to the Federal Fair Debt Collection Practices Act, ("FDCPA"), Defendants are prohibited from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

(ECF No. 3, ¶¶ 5-6, 8, 14 and 58.)

The court's analysis as to whether SPS qualifies as a "debt collector" under the FCPA is two-fold. "[T]he overall structure of § 1692a(6) makes clear that when assessing whether a person

qualifies as a 'debt collector,' we must first determine whether the person satisfies one of the statutory definitions given in the main text of § 1692a(6) before considering whether that person falls into one of the exclusions contained in subsections § 1692a(6)(A)-(F)." *Henson v. Santander Consumer USA, Inc.*, 817 F.3d 131, 136 (4th Cir. 2016). "If a person does not satisfy one of the definitions in the main text, the exclusions in subsections § 1692a(6)(A)-(F) do not come into play." *Id.* (cieting *Davidson v. Capital One Bank (USA), N.A.,* 797 F.3d 1309, 1314 (11th Cir. 2015)).

Plaintiff alleges that SPS, as a loan servicer, collects payments on behalf of Towd Point. The FDCPA's "definition of the term 'debt collector' includes a person 'who regularly collects or attempts to collect, directly or indirectly, debts owed [to] . . . another.'" *Heintz v. Jenkins*, 514 U.S 291, 293 (1995) (quoting § 1692a(6)). Because SPS collects loan payments on behalf of a third party, it meets the definition of a debt collector as contemplated. The second part of the court's analysis looks at whether SPS falls within one of the exemptions set forth in § 1692a(6)(A)-(F). Although SPS collects loan payments on behalf of others, as a loan servicer, it is responsible for collecting on loans not in default. Plaintiff alleges that SPS began servicing her loan in 2016 and that she did default on the loan until 2020. SPS falls squarely within the exemption set forth in § 1692a(6)(F)(iii).

> As relevant here, exclusion (F)(iii) provides that "[t]he term [debt collector] does not include . . . any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). To simplify, this exclusion means that a person collecting nondefaulted debts on behalf of others is not a debt collector. This exclusion was intended by Congress to protect those entities that function as loan servicers for debt not in default. See S. Rep. No. 95-382, at 3-4 (1977), as reprinted in 1977 U.S.C.C.A.N. 1695, 1698 ([T]he committee does not intend the definition [of debt collector] to cover the activities of . . . mortgage service companies

> and others who service outstanding debts for others, so long as the
> debts were not in default when taken for servicing.

*Henson*, 817 F.3d at 136 (emphasis added in original).  Accordingly, Plaintiff's FDCPA claims

against SPS will be dismissed.

## V.   NEGLIGENCE (COUNT V)

Rosenberg argues that Plaintiff fails to allege that it owed her a duty or that it breached any

such duty.  (ECF No. 14-1 at 11.)  Additionally, Rosenberg reiterates its position that Plaintiff has

not suffered any damages.  *Id.*   SPS also argues that Plaintiff does not allege it owed her a duty or

that said duty was breached.

"Under Maryland law, "a plaintiff must establish four elements to prove negligence: (1) a

duty owed by the defendant; (2) a breach of that duty by the defendant; (3) a legally cognizable

causal relationship between the breach of duty and the harm suffered; and (4) damages." *Agomuoh*

*v. PNC Fin. Servs. Grp.*, 2017 U.S. Dist. LEXIS 222993, *21 (D. Md Feb. 16, 2017) (citing

*McKinney v. Fulton Bank*, 776 F.Supp.2d 97, 104-05 (D.Md. 2010); and *Jacques v. First Nat'l*

*Bank of Md.*, 307 Md. 527, 534 (1986)).

Plaintiff does not allege that either SPS or Rosenberg owed her a common law duty or that

either Defendant breached a duty of care owed to her.  Plaintiff alleges "an intimate nexus required

to establish liability where SPS and Rosenberg knew or should have known of Ms. Bowman's

reliance on SPS and Rosenberg exercising due care…"  The court does not construe Plaintiff's

Complaint to allege a duty owed by SPS or Rosenberg.  Further, to the extent Plaintiff alleges a

breach of some duty in the form of a misrepresentation, the court's analysis regarding ownership

of the Loan resolves this in favor of Defendants.  Plaintiff's negligence claim against Defendants

will be dismissed.

**CONCLUSION**

For the reasons set forth herein, the Rosenberg Motion (ECF No. 14) is GRANTED IN PART and DENIED IN PART: granted as to Counts I, II, III, and V; and denied as to Count IV. The SPS Motion is GRANTED.  The case shall proceed on Count IV against Rosenberg, only.

A separate order follows.


Date: <u>December 4, 2023</u>                              _____/s/_____ _____
                                                                      Julie R. Rubin
                                                                      United States District Judge